UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HKB HOSPITALITY LLC, d/b/a
QUALITY INN BROWNSVILLE,
                     Plaintiff,

          -v-

MT. HAWLEY INSURANCE
COMPANY,
                     Defendant.

23-CV-372 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    Plaintiff HKB Hospitality LLC, d/b/a Quality Inn Brownsville ("HKB"), brings this action against Defendant Mt. Hawley Insurance Company ("Mt. Hawley") for breach of contract. Currently before the Court is Mt. Hawley's motion for summary judgment. For the reasons that follow, Mt. Hawley's motion is granted.

## I. Background

### A. Factual Background

    The following facts are taken from the parties' Local Rule 56.1 Statements. (ECF No. 33-1 ("Def.'s SOF"), ECF No. 35-1 ("Pl.'s SOF").) The facts recited here are undisputed unless otherwise noted and are construed in the light most favorable to the non-movant.

    Mt. Hawley, a surplus lines insurer, issued Commercial Property Policy No. MPC0171500 to HKB, a Texas limited liability company, for the period from August 18, 2021, to August 18, 2022 (the "Policy"). (Def.'s SOF ¶ 1; Pl.'s SOF ¶ 1.) The Policy covered HKB's property at 7051 Padre Island Highway in Brownsville, Texas (the "Property") for "special [causes of loss] including equipment breakdown excluding earthquake and flood." (ECF No. 33-3 at 3 (capitalization omitted).) The Policy imposes a condition that in the event of loss or

damage, HKB must "[g]ive [Mt. Hawley] prompt notice of the loss or damage [and] [i]nclude a description of the property involved." (*Id.* at 18.) A Windstorm or Hail Loss Reporting Limitation Addendum to the Policy ("Addendum") further provides:

> Regardless of anything to the contrary in this policy to which this endorsement is attached, the following limitations apply in reference to reporting of claims under this policy:
>
> With respect to loss or damage caused by windstorm or hail, including any named storm, you must give us prompt notice of the loss or damage and include a description of the property involved, and as soon as possible give us a description of how, when and where the loss or damage occurred. In no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim.

(*Id.* at 87.) A choice-of-law clause in the Policy states that "[a]ll matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules)." (*Id.* at 92.)

According to HKB, a windstorm damaged the Property's roof and exterior elevations on September 30, 2021. (Def.'s SOF ¶ 3.) HKB's owner and corporate representative, Hemant Bhakta, was present at the Property during the storm. (*Id.* ¶ 6.) Bhakta testifies that he noticed "some broken bricks, debris[,] [and] lifted shingles," although he did not access the roof. (ECF No. 33-7 at 42, 45.) Bhakta further testifies that because he had limited experience with construction or property insurance, he did not immediately report the loss to Mt. Hawley, but rather "wait[ed] to see what insurance he had, what had occurred, and whether there was any damage." (Pl.'s SOF ¶ 6.) He contacted a lawyer to handle the matter. (Def.'s SOF ¶ 7.)

On April 1, 2022, HKB, through its attorney, reported a claim under the Policy for the windstorm damages. (*Id.* ¶ 3.) After investigating the claim, Mt. Hawley informed HKB on July 21, 2022, that "no payment can be made at this time" because "the cost of repair is less than the

2

$25,000.00 windstorm deductible" under the Policy. (*Id.* ¶ 4; ECF No. 33-5 at 2.) While Mt. Hawley characterized much of the damage as wear and tear, HKB contends that "no . . . part of the property had previously leaked or experienced water penetration." (Pl.'s SOF ¶ 4.)

### B. Procedural History

HKB commenced this action against Mt. Hawley on January 27, 2023, asserting a breach of contract claim based on Mt. Hawley's alleged failure to conduct a reasonable investigation and refusal to pay the damages due. (ECF No. 10-1 ¶¶ 22-28.) Mt. Hawley moved for summary judgment on December 15, 2023. (ECF No. 33.) HKB filed an opposition on December 29, 2023. (ECF No. 35.) Mt. Hawley filed a reply on January 5, 2024. (ECF No. 36.)

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In deciding a motion for summary judgment, a court must consider the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

## III. Discussion

### A. Choice of Law

The parties first dispute whether New York or Texas law governs. (*See* ECF No. 34 at 11-14; ECF No. 35 at 4-7.) Although the Policy contains a choice-of-law provision selecting New York law, HKB argues that the provision "is invalid under general contract principles and the Texas Insurance Code." (ECF No. 35 at 4-7.)

3

This Court sits in New York and therefore applies New York's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Section 5–1401 of New York's General Obligations Law provides that the parties to any contract involving a transaction of at least $250,000 "may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." N.Y. Gen. Oblig. Law § 5–1401. Section 5–1401 applies to the Policy at issue, which has a per occurrence loss limit of $2,944,779. (ECF No. 33-3 at 3.) Under New York law, "the need for a conflict-of-laws analysis is obviated by the terms of the parties' agreement" if "there is an express choice of New York law in the contract pursuant to General Obligations Law § 5–1401." *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 20 N.Y.3d 310, 312 (2012). In *Ministers & Missionaries Ben. Bd. v. Snow*, the New York Court of Appeals went further to hold that "New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract, even if the contract is one that does not fall within General Obligations Law § 5–1401." 26 N.Y.3d 466, 474 (2015).

"Since *Ministers* was handed down . . . , the courts of New York have refused to consider the public policy of foreign states . . . to overturn an otherwise valid contractual choice of law provision." *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-CV-4819, 2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018), *aff'd and remanded*, 796 F. App'x 55 (2d Cir. 2020) (summary order). HKB's arguments to the contrary are unavailing. HKB contends that the Policy's choice-of-law provision "violates the very sections the Texas Insurance Code which allow Defendant to operate in Texas in the first place." (ECF No. 35 at 4 (emphasis omitted).) But under *Klaxon*, it is the choice-of-law regime of New York, not Texas, that controls the validity of the Policy's choice-of-law clause. *See Klaxon*, 313 U.S. at 496. Thus, the controlling

4

rules are Section 5–1401 and *Ministers*, not the Texas Insurance Code.  *See, e.g., CBKZZ Inv. LLC v. Renaissance Re Syndicate 1458 Lloyds*, No. 22-CV-10672, 2024 WL 728890, at *2 (S.D.N.Y. Feb. 22, 2024) (applying New York law pursuant to a choice-of-law clause in an insurance policy solicited, negotiated, and delivered in Texas, without regard to Texas insurance law); *Ram Krishana, Inc. v. Mt. Hawley Ins. Co.*, No. 1:22-CV-03803, 2024 WL 1657763, at *3-4 (S.D.N.Y. Apr. 17, 2024) (applying New York law pursuant to an identical choice-of-law clause in Mt. Hawley's insurance policy despite prohibition by the law of Louisiana, where all contacts lie).  Under both Section 5–1401 and *Ministers*, the Policy's choice-of-law clause must be honored.

The Court concludes that the choice-of-law clause must be enforced and the substantive law of New York will govern.

**B.      Timeliness of Notice**

Under New York law,[1] "compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 142 (2d Cir. 1995).  The failure to provide timely notice "relieves the insurer of its coverage obligation, regardless of prejudice." *Minasian v. IDS Prop. Cas. Ins. Co.*, 676 F. App'x 29, 31 (2d Cir. 2017) (summary order) (citing *Briggs Ave. LLC v. Ins. Corp. of Hannover*, 11 N.Y.3d 377, 381-82 (2008)).  "When an insurance policy requires that notice of an occurrence or claim be given promptly, like the one at issue here requiring notice 'as soon as possible,' notice must be given within a reasonable time in view of all of the

---

[1] The Policy's choice-of-law clause, which provides that "[a]ll matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York," squarely governs the interpretation of the Policy's notice condition.  (ECF No. 33-3 at 92.)

5

facts and circumstances."[2] *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 F. App'x 52, 56 (2d Cir. 2011) (summary order); *see also Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 723 (2d Cir. 1992) ("[A] policy stating that notice of an occurrence be given as soon as practicable requires that notice be given within a reasonable time under all the circumstances." (cleaned up)).

"A notice obligation is triggered when 'the circumstances known to the insured . . . would have suggested to a reasonable person the possibility of a claim.'" *Minasian*, 676 F. App'x at 31 (quoting *Sparacino*, 50 F.3d at 143). The windstorm occurred on September 30, 2021. (Def.'s SOF ¶ 3.) HKB's corporate representative Hemant Bhakta was present at the Property that day and observed damage to its roof, including "broken bricks, debris[,] [and] lifted shingles." (ECF No. 33-7 at 42.) Although these evident damages suggested to HKB the possibility of a claim by September 30, 2021, HKB did not notify Mt. Hawley until April 1, 2022—after a six-month delay. (Def.'s SOF ¶ 7.) "New York courts have held as a matter of law on numerous occasions that . . . inexcusable delays [of two months or less] in providing notice discharged an insurer's obligation to provide coverage." *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (collecting cases that hold delays ranging from 10 to 53 days unreasonable as a matter of law); *see also Minasian*, 676 F. App'x at 31 (collecting cases ranging from 29 to 51 days); *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 440 (2d Cir. 1995) ("Under New York law, delays for one or two months [in notifying the insurer] are routinely held 'unreasonable.'").

---

[2] The Policy requires that HKB give "prompt notice" to Mt. Hawley in the event of loss or damage. (ECF No. 33-3 at 18.) It further provides that, with respect to windstorm or hail loss, HKB "must give [Mt. Hawley] *prompt* notice of the loss or damage and include a description of the property involved, and *as soon as possible* give [Mt. Hawley] a description of how, when and where the loss or damage occurred." (*Id.* at 87 (emphasis added).)

Having delayed six months in notifying Mt. Hawley about its loss, HKB bears the burden of showing a reasonable excuse for its delay. *See, e.g., Argentina v. Otsego Mut. Fire Ins. Co.*, 86 N.Y.2d 748, 750 (1995) ("Since notice was not actually given until 171 days after the occurrence, plaintiffs had the burden of showing that there was a reasonable excuse for the delay."); *Rockland Exposition, Inc. v. Marshall & Sterling Enters, Inc.*, 31 N.Y.S.3d 139, 143 (2d Dep't 2016) ("[D]efendants established their prima facie entitlement to judgment as a matter of law by establishing [a 52-day delay] . . . . In opposition, [Plaintiff must] raise a triable issue of fact as to whether it had a reasonable excuse for the 52-day delay."). HKB explains that it "was waiting to see what insurance [it] had, what had occurred, and whether there was any damage," and that it wanted to hire an attorney because "the insurance policies are very complex in the wordings," which HKB was "not very good at understanding." (Pl.'s SOF ¶ 6.) These excuses, however, are inadequate. To the extent that HKB did not know what insurance it had, "a lack of knowledge of an insurance policy does not excuse a delay in notification of an occurrence." *Olin Corp.*, 966 F.2d at 724. To the extent that HKB had not made a specific assessment of its damages, that does not negate the fact HKB was alerted to "the possibility of a claim" on September 30, 2021, and was required to notify Mt. Hawley within a reasonable time thereafter. *See Minasian*, 676 F. App'x at 32 ("[P]laintiffs' alleged lack of sophistication cannot excuse their notice delay . . . ."). To the extent that HKB had trouble understanding the Policy or determining its coverage, "it is true that a justifiable lack of knowledge of insurance coverage may excuse a delay in reporting an occurrence." *Rockland Exposition, Inc.*, 31 N.Y.S.3d at 143 (brackets omitted) (quoting *Winstead v. Uniondale Union Free School Dist.*, 201 A.D.2d 721, 723 (2d Dep't 1994)). But to prevail on this theory, the insured must prove that it "made reasonably diligent efforts to ascertain whether coverage existed," and HKB has adduced no

evidence to that effect.[3]  *See id.* (holding excuse unreasonable where although the plaintiff "alleged that it consulted with attorneys about [the underlying occurrence], it did not allege that it made any effort to inquire as to the possibility of coverage in connection with the [occurrence] during the 52-day period").  Thus, HKB lacks a valid excuse for its six-month delay in notice.

HKB's primary contention, rather, is that it is entitled to a longer notice period based on the Policy's Windstorm or Hail Loss Reporting Limitation Addendum, which provides:

> **Regardless of anything to the contrary in this policy to which this endorsement is attached**, the following limitations apply in reference to reporting of claims under this policy:
>
> With respect to loss or damage caused by windstorm or hail, including any named storm, you must give us prompt notice of the loss or damage and include a description of the property involved, and as soon as possible give us a description of how, when and where the loss or damage occurred.  **In no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim.**

(ECF No. 35 at 8 (emphasis in original).)  HKB argues that the last provision "expressly allows for hail/wind losses to be reported up to one (1) year from the date of loss." (*Id.*)

"As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015) (quotation marks omitted).  In doing so, the court will avoid, if possible, "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless." *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (cleaned up).  HKB's proposed interpretation of the Addendum is

---

[3] Bhakta states in his deposition that he does not remember when HKB contacted or hired an attorney, whether it was within a month of the storm, and how long it took for the attorney to file an insurance claim.  (ECF No. 33-7 at 46-47.)

unavailing for two reasons. First, the provision that a claim may *never* be filed more than one year after the date of loss, by its plain meaning, does not suggest that a claim filed within one year is *always* timely. Second, if that provision were interpreted to mean that the insured only needs to notify the insurer within one year, that would render the prior sentence—mandating that the insured "must give . . . prompt notice" and a description of the loss "as soon as possible"—superfluous. (ECF No. 33-3 at 87.) By contrast, Mt. Hawley's proposed interpretation would give full meaning to each of the two provisions: "that wind and hail claims reported within one year are still subject to the general 'prompt notice' requirement, but wind and hail claims reported more than one year after the reported loss are untimely regardless of the circumstances surrounding the delay." (ECF No. 36 at 10.) In other words, the Addendum imposes two independent requirements: (1) HKB must give prompt notice to Mt. Hawley—within a reasonable time from when it should have become aware of "the possibility of a claim," *Minasian*, 676 F. App'x at 31; and (2) HKB must file a claim within one year of the date of loss or damage, regardless of when HKB might discover its claim. When interpreted this way, the two provisions are independently enforceable. This accords with the word "limitations," in plural form, in the first sentence of the Addendum. It is the only reasonable interpretation that follows from the plain language of the Policy and does not render one of its two clauses superfluous.

The New York Appellate Division recently reached the same outcome in a similar case. *See Menlo Energy Fla., LLC v. Certain Underwriters at Lloyds London*, 213 A.D.3d 494 (1st Dep't 2023). There, the notice provision of an insurance policy read: "It is a condition precedent to liability that in the event of loss or damage insured under this Policy the insured shall give notice of loss or damage to Underwriters hereon as soon thereafter as practicable, and in any

9

event within sixty (60) days of the date of loss after which any claim shall become forfeit." *Id.* at 494-95. Following the "principles of contract interpretation [that] preclude a court from adopting a construction of a policy that leaves a provision without force and effect," the court concluded that the policy "required the insured to satisfy two distinct conditions to satisfy its notice obligations: (i) to provide Underwriters with notice of the loss or damage as soon as practicable; and (ii) to provide Underwriters with notice within 60 days of the date of loss." *Id.* at 495. Thus, the court held that even if the insured provided notice 51 days after it learned of the loss—within the 60-day period—notice was untimely as a matter of law. *Id.*

Because New York courts have repeatedly held notice delays of less than two months to be unreasonable as a matter of law, and because HKB has failed to show special circumstances or excuses to justify its six-month delay, the Court concludes that HKB's notice to Mt. Hawley was untimely, relieving Mt. Hawley of its coverage obligations.

**IV.   Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motion at Docket Number 33, to enter judgment dismissing the Plaintiff's claims, and to close this case.

SO ORDERED.

Dated:  September 30, 2024
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

10